KARA HENDRICKS, ESQ.
Nevada Bar No. 07743
AKKE LEVIN, ESQ.
Nevada Bar No. 09102
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone:  (702) 792-3773
Facsimile:  (702) 792-9002
Email:        hendricksk@gtlaw.com
                  akke.levin@gtlaw.com

*Counsel for Plaintiffs Lee Soo Ahn, Bok Hyun Eum, ALS Property Holdings, LLC, EBH Management Co., LLC, and Sea Fox Management, LLC*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | CASE NO. 25-12285-abl |
| | CHAPTER 7 |
| **DUKE PARK**, | |
| Debtor(s). | |
| Lee Soo Ahn, Bok Hyun Eum, ALS Property Holdings, LLC; EBH Management Co., LLC, Sea Fox Management, LLC, | Adversary No. 25-01162-abl |
| Plaintiffs, | |
| v. | |
| Duke Park, | HEARING DATE:  AUGUST 11, 2026 |
| | HEARING TIME:   1:30 P.M. |
| Defendant. | |

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
### ON ALL CLAIMS AGAINST DUKE PARK

Plaintiffs Lee Soo Ahn, Bok Hyun Eum, ALS Property Holdings, LLC, EBH Management Co., LLC, and Sea Fox Management, LLC ("Plaintiffs") hereby file their motion for summary judgment on all claims against Duke Park ("Motion").  Plaintiffs' Motion is based on the papers and pleadings on file, the Declaration of Akke Levin, the Statement of Undisputed

1

Facts filed concurrently with the Motion, the Appendix of Exhibits to the Statement of Undisputed Facts in support of the Motion, the following points and authorities, and such argument the Court may allow.

## I.    INTRODUCTION

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105 (2007) (internal quotation marks and citation omitted). Debtor Duke Park is anything but honest and unfortunate. Park is a calculating conman. In 2023, he ingratiated himself with Plaintiffs' family under the guise of offering business and financial advice and assistance. Once he was entrusted with managing plaintiffs ALS Property Holdings, LLC, EBH Management Co., LLC, and Sea Fox Management, LLC ('the "Entities") and obtained access to their bank accounts, he systematically began looting the bank accounts for his personal benefit until the accounts were emptied out. He transferred hundreds of thousands of dollars from the Entities' bank accounts to bank accounts he controlled and to insiders. He created fake corporate meeting minutes that purportedly made him the owner of the Entities. Posing as the Entities' owner, Park took out loans in the Entities' name against their real estate holdings and used more than $850,000 of the loan proceeds that belonged to the Entities as downpayments on three luxury homes he purchased in his own name.

Plaintiffs' evidence overwhelmingly shows Park's conduct meets all the elements of 11 U.S.C. §§ 523(a)(4) for embezzlement and larceny, and the elements of willful and malicious injury to property under 11 U.S.C. §§ 523(a)(6). *See* generally Statement of Undisputed Facts ¶¶ 1–40; **Exhibits 1–25**. None of his conduct benefited Plaintiffs. None of it was inadvertent. Park has no defenses. In fact, he did not even file an answer to Plaintiffs' complaint. He produced no documents in his defense. He did not disclose a rebuttal expert report.

For these reasons and those stated below, the Court should enter summary judgment in Plaintiffs' favor and against debtor Duke Park on all Plaintiffs' claims and order that Park's debts to Plaintiffs are not subject to a discharge under 11 U.S.C. § 727 because of Park's embezzlement, larceny, and willful and malicious injury to Plaintiffs' property.

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773    Facsimile: (702) 792-9002

## III.    ARGUMENT

### A.    Summary Judgment Standard

"In adversary proceedings before the bankruptcy court, the familiar summary judgment standard established in Federal Rule of Civil Procedure 56 applies." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing Fed. R. Bankr.P. 7056 and *North Slope Borough v. Rogstad* (*In re Rogstad*), 126 F.3d 1224, 1227 (9th Cir.1997)).

Under FRCP 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d at 707 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)).

Although the party moving for summary judgment bears the burden to show that there is no genuine issue of material fact, if the motion is properly supported, "the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial." *In re Barboza*, 545 F.3d at 707 (citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002)).  Nonmoving parties "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991).

The burden of proof in dischargeability litigation is preponderance of evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654 (1991); *see also, e.g.*, *In re Soto*, 767 B.R. 612, 616 (E.D. Cal. 2026).

As discussed below, Plaintiffs' Motion is well-supported, the relevant and material facts are undisputed, and Plaintiffs are entitled to summary judgment as a matter of law.

### B.    Plaintiffs' Ownership of the Entities is Established and Undisputable

Collateral estoppel or issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment . . . " *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161 (2008).  The four

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773    Facsimile: (702) 792-9002

requirements for issue preclusion are: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *United States Internal Revenue Serv. v. Palmer* (*In re Palmer*), 207 F.3d 566, 568 (9th Cir. 2000).

Here, Park is collaterally estopped from relitigating the ownership of plaintiffs ALS Property Holdings, LLC ("ALS"), EBH Management Co., LLC ("EBH"), and Sea Fox Management, LLC ("Sea Fox") (collectively, "the Entities") because all four elements of issue preclusion are met.

First, Park had a full and fair opportunity to litigate the ownership issue in the state court action, Case No. A-24-889923-B. There was a seven-day evidentiary hearing on the sole issue of ownership of the Entities. *See* Statement of Undisputed Facts ("SUF"), ¶¶ 41–42; Declaration of Akke Levin ("Levin Decl."), ¶¶ 2–8; **Exhibits 1–7** (Hearing Transcripts of Days 1 through 7); **Exhibit 8** (Findings of Fact and Conclusions of Law Granting Ahn and Eum's Motion for Preliminary Injunction and Denying Park's Motion for Preliminary Injunction ("FFCL")) at 2. Park was a party in the case, was present at the hearing, was represented by counsel, was allowed to testify and his counsel was allowed to cross-examine witnesses, and Park had a certified translator to assist him. *See id*. Thereafter, Plaintiffs filed a summary judgment motion in state court to obtain a final judgment on the issue and Park's claims. SUF, ¶ 44; Levin Decl. ¶ 10; **Exhibit 9**. Although Park was served with the motion and attended the hearing, Park did not file an opposition to Plaintiffs' motion. *Id*.

Second, the ownership issue was "actually litigated." In fact, the evidentiary hearing was dedicated entirely to that issue. SUF ¶ 41; **Ex. 8** (FFCL). The state court judge found that Ms. Ahn and Mr. Eum always owned the Entities, never discussed selling their ownership interests to Park, let alone sell the Entities to Park, and that the documents Park offered as purported evidence were fake. SUF, ¶¶ 41–42; **Ex. 8** (¶¶ 59–87 and at 27).

/ / /

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada  89135
Telephone: (702) 792-3773    Facsimile:    (702) 792-9002

Third, Park lost the ownership issue.  The state court judge not only granted Plaintiffs a preliminary injunction on the issue but also entered a final judgment in Plaintiffs' favor on the matter, which Park did not appeal. SUF ¶ 44; **Ex. 8**; **Ex. 9**.[1]

Fourth, Park was the plaintiff and counter-defendant in the state court action. SUF ¶ 41; **Ex. 8** at 1 (caption).

"The Full Faith and Credit Act, 28 U. S. C. § 1738 . . . requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S.Ct. 1517 (2005) (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474 U. S. 518, 523 (1986)). Therefore, it is undisputable in this case that Ms. Ahn and Mr. Eum are and always were the rightful owners of the Entities.

### C.      Park's Embezzlement Bars a Discharge of his Debt to Plaintiffs

A discharge under 11 U.S.C. § 727 "does not discharge an individual debtor from any debt for . . . embezzlement . . . "  11 U. S. C. § 523(a)(4).  Federal law controls the meaning of the term "embezzlement.  *In re Soto*, 767 B.R. 612, 616 (E.D. Cal. 2026) (citing *First Del. Life Ins. Co. v. Wada* (*In re Wada*), 210 B.R. 572, 576 (9th Cir. BAP 1997)).   The Supreme Court defined "embezzlement" as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294 (1895).

The three elements of "embezzlement" are: "(1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud." *Transam. Comm. Fin. Corp. v. Littleton* (*In re Littleton*), 942 F.2d 551, 555 (9th Cir. 1991) (internal quotation marks and citations omitted). All three elements are supported by substantial undisputed evidence.

---

[1] The Court may take judicial notice of the FFCL and the summary judgment order entered by the state court because they are matters of public record and their authenticity cannot be disputed. *See, e.g., Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998); *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1117-18 (D. Nev. 2020).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773      Facsimile:   (702) 792-9002

**1.    Park rightfully possessed (but did not own) Plaintiffs' property**

Late April 2023, Park was entrusted with the management of Entities. SUF, ¶ 22; Levin Decl. ¶ 8; **Ex. 7** (Day 7 Tr. at 14:18–15:1). As manager of the Entities, Park asked and received access to the Entities' bank accounts. SUF, ¶ 22; **Ex. 7** (Day 7 Tr. at 15:18–16:9); **Exhibit 5** (Day 5 Hearing Tr. at 58:12–23). The fact that Park had access to the Entities' bank accounts to manage the Entities' affairs did not make him an owner of the Entities. *See In re Wada*, 210 B.R. 572, 577 (BAP 9th Cir. 1997) ("the fact the Debtor had lawful possession of the funds" and the "discretion to dispose of the funds on behalf of the [owner] is insufficient to confer ownership of the funds to the Debtor"). And he never was. SUF, ¶¶ 3–5; **Ex. 8** at 27; **Exhibits 10–12**.

**2.    Park misappropriated Plaintiffs' property for his own use**

Rather than using the funds of the Entities' bank accounts to manage the day-to-day affairs, Park began to use the Entities' bank accounts for his personal use. *See* SUF ¶¶ 23–30; Levin Decl. ¶¶ 17–21; **Exhibits 16–20**. In May 2023, shortly after he obtained control over ALS's bank account, Park transferred $20,000 from ALS's bank account to the bank account of his company, Soom Kimchi. SUF ¶ 25; **Exhibit 16** (at ALS000082). He made several additional transfers from ALS's bank account to his Soom Kimchi account. SUF, ¶¶ 25, 27; **Ex. 16** (at ALS000074); Levin Decl. ¶ 19; **Exhibit 18** (at ALS 0002882). These transfers were unauthorized, concealed, and had no legitimate purpose. ALS did no business with Soom Kimchi. SUF ¶ 31. Park transferred over $149,000 from ALS's bank account to his Soom Kimchi account between May and August 2023. SUF ¶ 28; Levin Decl. ¶ 24; **Exhibit 23** (Prove Up Hearing Tr. at 24:8–10). In addition, Park transferred over $80,000 from ALS's bank account to his personal bank account between April 2023 and March 2024. SUF ¶ 30; **Ex. 23** (Prove Up Hearing Tr. at 24:2–4). In total, Park made more than $1.2 million in transfers from the bank accounts of ALS and Sea Fox to himself, his companies, family members, insiders, and for use as down payments for homes he purchased in his own name. SUF ¶¶ 25–28, 30, 37–40; Levin Decl. ¶ 26; **Exhibit 25** (Expert Report of Whitney Alary at 8, 11, 18.

/ / /

6

Park also used ALS's real properties for his personal use.  Specifically, he used the equity to purchase three high-priced homes in his own name:  (a) 1392 Via Merano, Henderson NV 89052 ("Via Merano"), which he purchased for $1,150,000.00; (b) 33 Stonemark Drive, Henderson NV 89052 ("Stonemark"), which he purchased for $1,2500,000.00; and (c) 9858 Sunriver Meadows Avenue, Las Vegas NV 89148 ("Sunriver Meadows") for $530,000.  SUF ¶ 26; Levin Decl, ¶ 16; **Exhibit 15**.

To do so, he first created fake meeting minutes purportedly showing that Ms. Ahn and Mr. Eum met with him on May 23, 2023, and on June 20, 2023 (when in fact they were in Korea), to transfer 100% of their membership interests in the Entities to Park.  SUF ¶¶ 32–35; Levin Decl. ¶ 22; **Exhibit 21**; **Ex. 8** (FFCL), ¶¶ ¶¶ 29, 30, 59–68.  Posing as managing member of ALS, Park took out a $550,000 loan in ALS's name secured by Glistening Light—which ALS owned free and clear—and used $461,805.56 of it as a downpayment for his purchase of 33 Stonemark.  SUF ¶ 38; **Ex. 15** (at LT 3573, 3794); **Ex. 16 (**at ALS000073); *id*. (at ALS000065).  Park also refinanced a $1 million loan on the Sea Fox Apartment building owned by ALS and EBH and increased it to $1,650,000. SUF ¶ 39; Levin Decl. ¶¶ 23; **Exhibit 22**.  Park used $193,520.40 of these loan proceeds for a downpayment on Sunriver Meadows, which he bought for himself.  SUF ¶ 39; **Ex. 15** (at LT 004177, 004187).

**3.      Park's forgeries and looting indicate plain fraud**

"While the precise degree of fraud indications required for § 523(a)(4) embezzlement may be uncertain, at a minimum, facts that could support an actual criminal prosecution are sufficient." *In re Soto*, 767 B.R. 619.  Circumstances indicating fraud are present where, as here, the defendant uses money meant for business purposes "for personal use." *In re Wada*, 210 B.R. at 576-77 (discussing *O'Connor v. Booker* (*In re Booker*), 165 B.R. 164 (Bankr. M.D.N.C.1994)).  In *O'Connor*, the plaintiffs gave the debtor, a financial advisor, $140,000 for investments on behalf of the plaintiffs. *O'Connor*, 165 B.R. at 171.  Instead of investing the money for the plaintiffs, the debtor "appropriated the money for personal use." *Id*.  The court found that the "circumstances surrounding the misappropriation clearly indicate fraud" and an intent to defraud. *Id*.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada  89135
Telephone: (702) 792-3773     Facsimile:   (702) 792-9002

Similarly, here, Park told Plaintiffs' son that he needed access to the Entities' bank accounts to determine if there were any unpaid HOA bills or company taxes to take care of. SUF ¶ 22. Instead of using the bank accounts to pay bills and otherwise manage the Entities, Park began looting the bank accounts for his personal benefit. SUF ¶¶ 23–30, 37–39; **Exs. 15–20, 23, 25**. As discussed above, between May 2023 and January 2024 Park transferred more than $1.2 million out of the Entities' bank accounts to his own bank accounts, to his company bank account, to his family members, to insiders, and to the title company for use as downpayments on homes for himself. *See id*.

Other circumstances indicating fraud are that Park opened three new bank accounts for the Entities with Nevada State Bank even though each of these Entities already had bank accounts with Bank of America. SUF ¶ 29; Levin Decl. ¶¶ 20–21; **Exhibits 19–20**. By setting up new accounts and creating new passwords he could shield his fraud from Plaintiffs and their family. *Id*.; Levin Decl. ¶ 8; **Ex. 7** (Day 7 Tr. at 26–27). He further created fake "gift letters" and meeting minutes, using forged signatures. SUF ¶ 20; **Ex. 15** (at LT 00052).

Therefore, Plaintiffs have met their burden by a preponderance of the evidence that Park committed embezzlement and that Park is not entitled to a discharge of his debt to Plaintiffs on this basis under 11 U.S.C. § 423(a)(4).

**D.      Park's Larceny also Forecloses a Discharge of his Debt to Plaintiffs**

A discharge under 11 U.S.C. § 727 "does not discharge an individual debtor from any debt for. . . larceny." 11 U.S. C. § 523(a)(4). Under federal common law, larceny has been defined as "the felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *In re Ormsby*, 591 F.3d 1199, 1205 (9th Cir. 2010) (citing 4 Collier on Bankruptcy ¶ 523.10[2] (15th ed. rev. 2008)). Although the court in *In re Ormsby* made "no determination concerning whether federal law requires a finding of fraudulent intent for larceny," if such requirement exists, it "may properly be inferred from the totality of the circumstances and the conduct of the person accused." *In re Ormsby*, 591 F.3d at 1206 (internal quotation marks and citation omitted).

/ / /

The totality of the circumstances proves that Park committed larceny and had the requisite intent. Park was unemployed but represented himself to Plaintiffs' children as a successful businessman who had business and financial expertise to obtain access to the Plaintiffs' properties and bank accounts. SUF ¶¶ 12, 17; Levin Decl. ¶¶ 4, 7, 8; **Exhibit 3** (Day 3 Tr. at 12, 75–76); **Exhibit 6** (Day 6 Tr. at 18–21, 25, 27); **Exhibit 7** (Day 7 Tr. at 9–10, 13). He systematically transferred all the money in the Entities' bank accounts to himself and his companies until there was no money left in the bank accounts. *See, e.g.,* **Ex. 16** (at ALS 00037). He created fake documents to obtain control over the Entities. SUF ¶¶ 32–35; **Ex. 8** (FFCL), ¶¶ 59–68. He systematically depleted the equity in the Entities' real properties by taking out new loans (Glistening Light) or by refinancing existing loans and using the loan proceeds for himself (Sea Fox) to buy luxury homes in his own name. SUF ¶¶ 37–39. All this was accomplished while Ms. Ahn and Mr. Eum were in Korea. SUF ¶ 15, **Ex. 2** (Day 2 Tr. at 17:11– 17).

### E.    Park's Conduct Also Bars a Discharge under 11 U.S.C. 523(a)(6)

A debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." 11 U.S.C. § 523(a)(6). Both willfulness and maliciousness must both be proven under Section 523(a)(6). *See Ormsby v. First American Title Co.* (*In re Ormsby*), 591 F.3d 1199, 1206 (9th Cir. 2010). Mere recklessness or negligence is not enough. *Kawaauhau v. Geiger* (*In re Geiger*), 523 U.S. 57, 61-62 (1998).

The term "willful and malicious" refers to "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse." *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986) (quoting 3 L. King, Collier on Bankruptcy § 523.16 at 523-118 (15th ed. 1983)). "[T]he conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury within the meaning of the § 523(a)(6)." *In re Littleton*, 942 F.2d 551, 554 (9th Cir. 1991) (internal quotation marks and citations omitted).

/ / /

/ / /

9

**1.     Park caused substantial injury to the Plaintiffs and their property**

Before May 2023, Plaintiffs owned six residential properties and an apartment building, which had a collective value of over $4 million. SUF ¶¶ 6, 9; Levin Decl. ¶ 14; **Exhibit 13**. Park admits this. **Ex. 13** (at 4:6–7). Before May 2023, ALS owned two of those real properties—Glistening Light and Banbury—free and clear. SUF ¶ 7; **Ex. 5** (Day 5 Tr. at 12:10–13). After May 2023, Park used the equity in those two properties to obtain loans, sold two properties to himself, refinanced loans on other properties, and used the loan proceeds to purchase three luxury homes in his own name. SUF ¶¶ 36–39; **Ex. 15**. He thereafter let all refinanced loans go into default and the lender foreclosed on several of Plaintiffs' properties, including the apartment building.   SUF ¶ 40. Plaintiffs suffered more than $372,000 in damages from Park's unauthorized sale of their properties; more than $379,000 from the unauthorized loans he took out on the Entities' properties; and more than $399,000 because Park let all loans go into default. *Id*.; **Ex. 25** (at 4, 8, 11, 18, and 20). Plaintiffs lost the apartment building, which produced monthly rental income. SUF ¶ 10.

Between May 2023 and March 2024, Park made numerous transfers from the bank accounts of ALS and Sea Fox to benefit himself, his companies, family members, and insiders, totaling $1.2 million.   SUF ¶ 40; **Ex. 25**.   Therefore, there is no question that Park caused Plaintiffs and their Entities substantial injury.

**2.     The injury was willful**

The "willful injury" requirement of § 523(a)(6) is met "when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1208 (9th Cir. 2001), *cert. denied*, 533 U.S. 930, 121 S.Ct. 2552 (2001); *see also, e.g., Carillo v. Su* (*In re Su*), 290 F.3d 1140, 1144-46 (9th Cir. 2002) and *In re Ormsby*, 591 F.3d at 1206 (holding to same effect).   This subjective standard can be met with "circumstantial evidence which tends to establish what the debtor must have actually known when taking the injury-producing action."   *In re Su*, 290 F.3d at 1146 n.6.   "The Debtor is charged with the knowledge of the natural consequences of his actions." *In re Ormsby*, 591 F.3d at 1206.

10

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135
Telephone: (702) 792-3773    Facsimile: (702) 792-9002

Here, the totality of the evidence discussed above shows that Park intended to rob Plaintiffs of their property and that he subjectively knew and must have known that his looting of Plaintiffs' bank accounts and his "looting" the equity in Plaintiffs' properties to buy property in his own name would necessarily and certainly cause great injury to Plaintiffs and their property. His willfulness is further demonstrated by the fact that he put all homes he purchased with Plaintiffs' money in his own name, let the new loans he took out in Plaintiffs' name go into default and never paid any of the money he took back. *Accord In re Ormsby*, 591 F.3d at 1207 (debtor inflicted willful injury on the creditor because he "must have known. . . . that his use of FATCO's title plants and other materials without paying for them had an economic value").

### 3. The injury was malicious

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d at 1209. "Malice may be inferred based on the nature of the wrongful act." *In re Ormsby*, 591 F.3d at 1207 (citing *In re Littleton*, 942 F.2d at 554).

Here, the nature of Park's acts shows maliciousness. Park's self-dealing described above was not merely reckless or negligent but intentional, criminal, calculated, and systematic. Not one of his numerous money transfers or loan transactions benefited Plaintiffs. They all only benefited himself. Courts have found maliciousness in conduct far less egregious than what Park did. *See In re Jercich*, 238 F.3d at 1209 (finding maliciousness where the debtor "knew he owed Petralia the wages and that injury to Petralia was substantially certain to occur if the wages were not paid; that Jercich had the clear ability to pay Petralia the wages; and that despite his knowledge, Jercich chose not to pay and instead used the money for his own personal benefit. Jercich has pointed to no `just cause or excuse' for his behavior."); *In re Ormsby*, 591 F.3d at 1207 (finding that the malicious injury prong was met because the debtor inflicted willful injury on the creditor, knew the legal way to obtain access to the title plants was to purchase rights," and offered no justification for his conduct). Therefore, there can be no doubt that what Park did meets the standard and that he should be denied a discharge of his debt to Plaintiffs under § 523(a)(6) as well.

11

**III.     CONCLUSION**

For the reasons stated above, the Court should enter summary judgment in favor of Plaintiffs and against Park and order that Park's debt to Plaintiffs  is nondischargeable under 11 U.S.C. § 523(a)(4) for embezzlement and larceny and under 11 U.S.C. § 523(a)(6) for his willful and malicious injury to Plaintiffs and their property.

DATE:  June 24, 2026

GREENBERG TRAURIG, LLP

By:   */s/ Akke Levin*

KARA HENDRICKS, ESQ.
Nevada Bar No. 07743
AKKE LEVIN, ESQ.
Nevada Bar No. 09102

*Counsel for Plaintiffs*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada  89135
Telephone: (702) 792-3773     Facsimile:  (702) 792-9002

**CERTIFICATE OF SERVICE**

I am a resident of the state of Nevada, over the age of eighteen years, and not a party to the within action.  My business address is 10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135.  On **June 24, 2026**, I served the foregoing document via *electronic mail and U.S. Mail:*

<div align="center">

DUKE PARK
304 S. Jones Boulevard, #198
Las Vegas, Nevada  89107
dukepark@me.com

</div>

I declare under penalty of perjury that the foregoing is true and correct.

Executed **on June 24, 2026**, at Las Vegas, Nevada.


<div align="right">

*/s/ Andrea Flintz*
An employee of Greenberg Traurig, LLP

</div>

<div style="writing-mode: vertical-rl">

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada  89135
Telephone: (702) 792-3773    Facsimile:   (702) 792-9002

</div>